MINTER *v.* LANE.

No. 8310.   NOVEMBER 12, 1931.

760

*W. S. Florence,* for plaintiff.   *A. S. Thurman,* for defendant.

HILL, J.   (After stating the foregoing facts.)   The charter of the City of Monticello, Georgia, provides that no person shall be eligible to the office of mayor or councilman of said city who has not been a resident thereof for one year or more continuously next preceding his election, and who is not a qualified elector to vote in the city elections of said city.   Acts 1901, p. 565 et seq.; Code of the City of Monticello, § 14.   The charter also provides that "All persons who shall have paid taxes legally imposed and demanded by the city authorities, except taxes for the year in which the election is held, and who have been bona fide residents of said city for sixty days previous to the time when the election is held, and who are qualified to vote in the County of Jasper for members of the General Assembly of Georgia, shall be considered electors and be entitled to vote in said city elections, and no others shall be qualified to vote."   Acts 1901, p. 565 et seq.; Code of Monticello, § 6.   The charter of the City of Monticello also provides that the mayor and councilmen shall be elected for a period of one year, and until their successors are elected and qualified.   Code of Monticello, § 8; Acts 1901, p. 565 et seq.

There is no controversy as to the facts of the present case, and the only issue is, as stated by counsel for plaintiff in error, did

the court err, under the facts, in refusing the prayer of the petition? Undoubtedly the respondent was not eligible to election as a member of council to succeed himself, under the pleadings, and he obviously recognized that fact by failing to take the oath of office and qualifying himself as such after the election. Then the question arises, was the respondent entitled under his former election as councilman in 1929, about which there is no question raised, to hold over in office until his successor is elected and qualified? It is to be assumed that respondent was legally qualified to hold office under his former election, and that is conceded. By the charter of the City of Monticello it is provided that the mayor and aldermen shall be elected for the period of one year, and until their successors are elected and qualified. The term of office was changed by an act of the legislature from the first Tuesday in February of each year to the first Tuesday in January of each year. It is unnecessary to go into the qualifications of mayor and aldermen, as stated, because no question is raised here as to the respondent's eligibility to hold the position to which he was elected in the fall of 1929, and which he contends he is entitled to hold until his successor is elected and qualified. The charter of the City of Monticello provides that if there is any vacancy in the office of alderman, the mayor and aldermen of said city shall fill the vacancy by an election, etc. No vacancy has been declared, so far as the record shows, and no election has been held to fill such vacancy, by a person legally eligible to hold such office; and therefore the conclusion is reached that the respondent, W. A. Lane, is entitled to act as a member of the city council of Monticello until his successor has been elected and qualified, as provided by law. There was no error in passing the order to which exception is taken. See *Lee* v. *Byrd,* 169 *Ga.* 622 (151 S. E. 28).

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Gilbert, J., who dissent.*

GILBERT, J., dissenting. When this proceeding was instituted, the respondent, Lane, admitted that he was not eligible for election as councilman in the election of December, 1930. He did not "qualify" by taking the oath of office for the term beginning January, 1931, by virtue of that election. He made no claim to the office for the new term. The court rendered a judgment on February 11, 1931, to the effect that he was "not qualified" to be elected

in December, 1930, and sustained the application for quo warranto. Lane did not except to that judgment. One who is ineligible to be elected to office is not qualified to hold it; otherwise the word "eligible," in that connection, would be meaningless. "'Eligible' is defined by law and other standard lexicographers thus: Black: 'Capable of being chosen; competency to hold office.' Bouvier and Anderson: 'This term relates to the capacity of holding, as well as that of being elected to, an office.' Abbott: 'The term "eligible to office" relates to the capacity of holding as well as the capacity of being elected.' 19 Am. & Eng. Enc. Law, 397: 'Capacity of being chosen, implying competency to hold office, if chosen.' Worcester: 'Legally qualified; capable of being legally chosen.' Webster: 'That may be selected; legally qualified to be elected to hold office.' Some law-writers define the word as legally qualified; as eligible to office; legally qualified to hold office; electible; proper to be chosen; qualified to be elected. Demaree v. Scates, 32 Pac. 1123, 1124, 50 Kan. 275, 20 L. R. A. 97, 34 Am. St. Rep. 113." 3 Words & Phrases, 2346.

The charter of the city provides that "a vacancy in the office of councilman caused by death, *failure to elect,* . . *shall* be filled by the remaining members of the council who shall *proceed at once* to elect a councilman for the unexpired term." Code of Monticello, § 12. When this case was decided in the superior court on February 11, 1931, about eleven months of the new term beginning on the first Tuesday in January still remained. There was a vacancy in the office as to the new term. Lane, who had been elected for a one-year term in December, 1929, made no claim to filling the office for the new term. His claim was that he had a right to and was "holding over" by virtue of his former election, notwithstanding the fact that he was not qualified to hold the office under the new term. It became the plain legal duty of the council, immediately after the admission of Lane in court and after the rendition of the judgment declaring him ineligible and not qualified, at once to elect to fill the office of councilman for the unexpired term ending next January. The charter is explicit, both as to how a vacancy may be caused and that the vacancy *shall* be filled *at once.* The charter provision is a mere enactment of a general principle. "An office is vacant in the eye of the law whenever it is unoccupied by a legally qualified incumbent who has a lawful

right to continue therein," and vice versa. "So, where one who by failure to comply with the law regulating elections has forfeited his right to the office, the result is a vacancy in the office." 46 C. J. 971, § 117, notes 6, 17, and cit. The precise question as to the vacancy in an office caused by failure to elect was decided by this court in a unanimous decision (*Cason* v. *Harn*, 161 *Ga.* 366, 369, 131 S. E. 88), with one difference. In that case the express language occurring in the charter of Monticello is not found in the statute then under consideration. The statute in that case contained the following language: "that in case of a vacancy by death, resignation, or *otherwise*, the remaining members shall immediately appoint a successor." The question arose as to whether the phrase "or otherwise" in that provision would include a case where there was a failure to elect. Chief Justice Russell, speaking for the court, said: "There may be three classes of vacancies: (1) A vacancy caused by a failure to elect or to hold an election. (2) A vacancy caused by the failure of one appointed or elected to an office to qualify as provided by law." The other class need not be quoted. In the opinion it was said: "The question then arises whether the use of the word 'otherwise' in section 15 in the clause, 'in case of vacancy by death or resignation or otherwise,' necessarily includes a vacancy caused by a failure on the part of one selected as a commissioner to qualify. . . . A vacancy might be caused after the commissioner had qualified by removal from the county or the State, or by conviction of a felony, or removal from office for any sufficient cause provided by law. . . In a generic sense the word 'vacancy' as applied to official positions means an absence of any one to hold the office and discharge its duties. A vacancy may be caused either by failure to elect the officer, the failure of the officer to qualify after his election, or his disqualification after both election and qualification."

The contention of Lane, that he can hold over under the prior term and actually serve in an office for which he is admittedly disqualified by reason of being a delinquent taxpayer, is not in accordance with law. The contention is based on the ruling in *Lee* v. *Byrd*, 169 *Ga.* 622 (supra), where it was held in general terms that there was no vacancy in the office of ordinary where the candidate receiving the larger vote was ineligible because of non-payment of taxes. There was no explanation of what was meant by the

term "no vacancy," although, as shown by numerous decisions and text-books, the term may be used in more than one sense. Whatever may be the merits of that case it is not my purpose here to discuss. It furnishes no authority for the contention made in this case. If I am wrong in this, and it should be deemed that the *Byrd* case furnishes authority, then the reply to that is that the case of *Cason* v. *Harn,* cited above, is an older case and was concurred in by all of the Justices. The facts of the two cases are so clearly different that it would seem impossible to confuse them. In the later case, Byrd, who was holding the office under a previous election, had been defeated. He was in no way ineligible. Lee merely obtained the larger number of votes. Byrd held over under the previous election until his successor was elected and qualified. The older case, *Cason* v. *Harn,* seems to have been overlooked by all of us in deciding *Lee* v. *Byrd.*

In the present case Lane was the incumbent, and it is Lane who is ineligible. It is he who clings to the office which he admits he is ineligible to hold. The decision in the *Byrd* case to the effect that there was no vacancy was reached by the majority, it would seem, from the fact that there was no provision in the Code expressly providing that a vacancy would occur under the circumstances obtaining in that case. Here the charter with regard to vacancy makes express provision. The trial judge concluded his opinion with these words: "As to who the city council of Monticello will select to fill said office is entirely a question with them under the law; and this court would have no authority under the present proceedings to pass any order requiring the mayor and city council of Monticello to elect a person to fill this office, because it is not germane to this petition." The judge was quite right in passing no order requiring council to elect. The statute was mandatory on the council. Their duty was plain. It seems at this late date that it is quite likely the council has before this time obeyed the statute and elected some person to fill the unexpired term. I am authorized to say that Chief Justice Russell concurs in this dissent.